[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

----------------------------------------

No. 06-13268
Non-Argument Calendar

----------------------------------------

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 09, 2007
THOMAS K. KAHN
CLERK

D.C. Docket No. 05-00058-CR-1-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CHRISTOPHER JODALE CUNNINGHAM,

Defendant-Appellant.

----------------------------------------
Appeal from the United States District Court
for the Southern District of Georgia
----------------------------------------

**(May 9, 2007)**

Before EDMONDSON, Chief Judge, DUBINA and CARNES, Circuit Judges.

PER CURIAM:

Defendant-Appellant Christopher Jodale Cunningham appeals his

convictions following a jury trial for conspiracy to commit armed bank robbery,

18 U.S.C. § 371, and armed bank robbery, 18 U.S.C. § 2113(a) and (d). No reversible error has been shown; we affirm.

On 29 March 2005, two men wearing dark jumpsuits and ski masks robbed a bank with guns in Waynesboro, Georgia. During Cunningham's trial, witness Brenda Rollins testified that, on the morning of 29 March, she saw Damien Jermaine Jones arrive at her apartment complex in Waynesboro, exit his car with a bag, and talk to Cunningham. She testified that she did not see the contents of Jones's bag; and, during her testimony, Rollins denied earlier telling F.B.I. Agent Charles McKee that she had seen a gun and a black jumpsuit in Jones's bag. Rollins also testified that, later on 29 March, she saw Cunningham as a passenger in a green car but that she could not see the car's driver. In addition, Rollins testified that, on the night of 29 March, she saw Cunningham return to her apartment building from the back of the building. Rollins denied telling Agent McKee that she had seen Cunningham jump the fence behind her apartment complex on the night of the robbery.

When Agent McKee testified at Cunningham's trial, the government asked him whether Rollins had told him that she saw items in the bag that Jones carried on the day of the bank robbery. Cunningham raised a hearsay objection; and the government explained that it was impeaching Rollins. The district court permitted

2

Agent McKee to answer the government's question; and Agent McKee testified that Rollins had told him that she saw a jumpsuit and a gun in Jones's bag. Agent McKee also testified that Rollins had reported seeing both Jones and Cunningham in the green car on the day of the robbery and had explained that she saw Cunningham jump the fence of her apartment building on the night of the robbery. The district court later denied Cunningham's request to explain to the jury that Agent McKee's testimony about Rollins's prior statements was for impeachment only and not for the truth of the matter stated.

Cunningham first argues that the district court erred in failing to give the requested limiting instruction to the jury. "We review a district court's refusal to give a requested jury instruction for abuse of discretion." United States v. Martinelli, 454 F.3d 1300, 1309 (11th Cir. 2006) (internal quotation omitted). The refusal to give a requested jury instruction is reversible error in these circumstances:

> (1) the requested instruction was a correct statement of the law, (2) its subject matter was not substantially covered by other instructions, and (3) its subject matter dealt with an issue in the trial court that was so important that failure to give it seriously impaired the defendant's ability to defend himself.

Id. (internal quotation omitted).

Even if we assume that Cunningham's requested instruction provided a correct statement of law and was not substantially covered by other instructions, we must consider whether the failure to give the instruction impaired Cunningham's ability to defend himself.[1]  Cunningham contends that, without Agent McKee's testimony about Rollins's statements, the government did not prove all elements of the charged crimes, including that Cunningham knew that a gun would be used during the robbery.  We disagree.

We first note that Rollins's statements -- even as reported by Agent McKee -- did not tie Cunningham directly with a gun in Jones's bag.  Neither Rollins nor Agent McKee testified that Jones gave the bag he had been carrying to Cunningham or that the bag was seen in the green car with Cunningham on the day of the robbery.  But the government did offer evidence linking Cunningham with materials -- guns, ski masks, and jumpsuits -- used during the robbery.  For instance, a witness testified that she saw Jones and Cunningham in a green Toyota

---

[1]Cunningham argues that we should consider whether the district court's failure to give the requested limiting instruction was harmless by examining if the district court's alleged error had no effect or only a slight effect on the jury's verdict.  But, as we recently explained in Martinelli, we evaluate whether a district court's failure to instruct the jury is an abuse of discretion by considering if the absence of the instruction impaired the defendant's ability to defend himself.  See Martinelli, 454 F.3d at 1309.

4

Tercel[2] with guns, black ski masks, and a dark bodysuit during March 2005, the month of the bank robbery.

In addition, as Cunningham acknowledges in his reply brief, "there is a great deal of circumstantial evidence tying Cunningham to the robbery," such as witness testimony that a car -- registered to Cunningham's sister, which she testified she bought for Cunningham -- was parked near the bank around the time of the robbery and that a man wearing a ski mask ran down the street and drove off in that car. A Georgia Bureau of Investigation Agent also testified that he saw Cunningham jump out of a vehicle being pursued by the police after the robbery and that Cunningham ran as money was falling off of him. Although Cunningham escaped from this pursuit, some of the money recovered matched the bank's bait money.[3]

Because of the evidence linking Cunningham to the robbery, a jury reasonably could infer that the ski masks, jumpsuits, and guns used in the robbery were the same items that had been seen with Cunningham in his green Toyota Tercel during the month of the robbery. Therefore, the jury could find beyond a

---

[2]Cunningham's sister testified that she bought a green Toyota Tercel for Cunningham on 1 March 2005.

[3]The bank gave $50 in "bait money" to the robbers, which is cash where the bank has recorded the denomination and serial numbers of the currency.

5

reasonable doubt that Cunningham knew that a gun would be used in the robbery, independent of Agent McKee's testimony. The district court's failure to give the requested limiting instruction did not impair Cunningham's ability to defend himself.[4]

Cunningham also argues that Agent McKee's hearsay testimony should not have been permitted because the government acted in bad faith by, according to Cunningham, offering Rollins as a witness only for the purpose of impeaching her. Cunningham asserts that the government planned to impeach Rollins so that the government could present to the jury hearsay testimony that was otherwise inadmissible.

In Rollins's initial interview with law enforcement, which occurred at her apartment complex, Rollins told officers that she wanted to speak with them later at the police department. According to Agent McKee, who participated in this interview, Rollins was not forthcoming with information; and she did not mention

---

[4]We also reject Cunningham's challenge to the failure to offer a limiting instruction on Agent McKee's testimony about Rollins's statements on who was seen in the green Toyota on the day of the robbery and how Cunningham approached Rollins's apartment building that night. Although Agent McKee's testimony was that Rollins had stated that Cunningham and Jones drove away on the day of the robbery in a green Toyota, Rollins testified that Cunningham was a passenger in this car, which, as we have discussed, was seen near the bank around the time of the robbery when a masked man got into it. And the differing accounts about how Cunningham approached Rollins's apartment building the night of the robbery do not demonstrate that the government failed to prove that Cunningham was involved with the bank robbery earlier that day.

seeing the contents of Jones's bag during this initial interview.[5]  But Agent McKee

testified that, during a later interview, Rollins stated that she saw a gun and

jumpsuit in Jones's bag on the day of the robbery.

We are not persuaded that the record shows that the government expected,

or reasonably should have expected, Rollins to deny seeing the contents of Jones's

bag during her trial testimony such that the government acted in bad faith by

calling Rollins as a witness.  The district court did not err in allowing the

government to impeach Rollins.[6]

AFFIRMED.

---

[5]At this interview, Rollins also did not deny seeing the contents of Jones's bag.

[6]Cunningham argues that we should review the district court's decision to allow Agent McKee's impeachment testimony for an abuse of discretion; and the government asserts that we should review this issue only for plain error because Cunningham did not argue previously that the government had acted in bad faith.  Under either standard of review, Cunningham's argument fails.